FILED

2012 Mar-16  PM 04:17
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### JASPER DIVISION

| | | |
|---|---|---|
| **CYNTHIA DAWN LEACH,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **6:11-cv-362-AKK** |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Cynthia Dawn Leach ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA").  This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence.  Therefore, for the reasons elaborated herein, the Court will **AFFIRM** the decision denying benefits.

### I. Procedural History

Plaintiff filed her application for Title XVI Supplemental Security Income

on May 8, 2007, (R. 102), alleging a disability onset date of March 5, 2007, due to

"fibromyalgia, back, muscle pain, carpel tunnel, migraines," (R. 116).  Plaintiff's

disability report alleged also that she is unable to work because she "cannot walk

as far as I used to, stairs are very difficult, my hands hurt, I am always in pain."

(R. 116).  After the SSA denied her application on August 21, 2007, (R. 49),

Plaintiff requested a hearing on August 23, 2007, (R. 20), and received one on

July 23, 2009, (R. 21).  At the time of the hearing, Plaintiff was 46 years old, had a

high school diploma, (R. 25), and past relevant work that included light and

skilled work as a barber and cosmetologist, light and unskilled work as a cashier,

heavy and semi-skilled work as a stocker, and light and semi-skilled work as a

sales clerk.  (R. 18, 39).  Plaintiff has not engaged in substantial gainful activity

since March 5, 2007.  (R. 116).

The ALJ denied Plaintiff's claims on September 10, 2009, (R. 19), which

became the final decision of the Commissioner when the Appeals Council refused

to grant review on January 22, 2011, (R. 1).  Plaintiff then filed this action

pursuant to section 1631 of the Act, 42 U.S.C. § 1383(c)(3).  Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial

evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v.*

*Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence."  *See id*.  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1)    whether the claimant is currently unemployed;

(2)    whether the claimant has a severe impairment;

(3)    whether the impairment meets or equals one listed by the Secretary;

(4)    whether the claimant is unable to perform his or her past work; and

(5)    whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative

answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'"  *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do."  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV.  The ALJ's Decision

The court turns now to the ALJ's decision to ascertain whether Plaintiff is correct that the ALJ committed reversible error.  In that regard, the court notes that, performing the five step analysis, initially, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date, and therefore met Step One.  (R. 14).  Next, the ALJ acknowledged that Plaintiff's severe impairments of "fibromyalgia, osteoarthritis, tendonitis, carpal tunnel syndrome, breast cyst, and obesity" met Step Two.  *Id*.  The ALJ then proceeded to the next step and found that Plaintiff did not satisfy Step Three since she "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments."  (R. 16).  Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four, where he determined that Plaintiff

has the residual functional capacity ["RFC"]to perform light work as defined in 20 C.F.R. § 416.967(b) as follows:  She can only carry or lift 20 pounds occasionally and 10 pounds frequently.  She should not use right leg controls.  She should be given the opportunity to alternate sitting and standing up to once every one-half hour.  She can frequently handle, finger, and feel, but not constantly.  She can occasionally climb, balance, kneel, stoop, crouch or crawl.  She should perform no work on ladders, ropes, scaffolds or at unprotected heights.

(R. 17).  In determining Plaintiff's RFC, the ALJ assigned Plaintiff's treating physician Dr. Thomas Holt's ("Dr. Holt") opinion "little weight as it is not supported by the longitudinal record of evidence."  (R. 18).  In light of Plaintiff's RFC, the ALJ held that Plaintiff was "unable to perform any past relevant work." *Id*.  Consequently, the ALJ moved on to Step Five where he considered Plaintiff's age, education, work experience, and RFC, and determined that there are "jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." *Id*.  As a result, the ALJ answered Step Five in the negative, and determined that Plaintiff is not disabled. *Id*.; *see also McDaniel*, 800 F.2d at 1030. It is this finding that Plaintiff challenges in this action.

## V.  Analysis

The court turns now to Plaintiff's assertion that the ALJ committed reversible error, which rests primarily on the ALJ's decision to give Dr. Holt's opinion "little weight:"

> Since the Court found conclusively the severe impairments previously identified, the issue is whether or not chronic moderate to moderate severe pain would preclude her from her previous employment and if so would it preclude employment in other occupations meeting the definition for substantial gainful employment for 40 hours per week for an eight hour workday.
>
> Certainly Dr. Holt believes the migraines would cause her to miss four to five days per month essentially preventing her from completing the probationary period of any employment.
>
> The Court failed to afford proper weight and consideration to the statement of Dr. Holt [and] furthermore the Court did not present substantial evidence in rebuttal of Dr. Holt's testimony.

Doc. 9 at 3-4.  In other words, Plaintiff contends that Dr. Holt's testimony establishes conclusively that Plaintiff has disabling migraines.  In light of Plaintiff's contention, the court must obviously focus on Dr. Holt's opinion and diagnosis.  In that respect, Dr. Holt testified to the following, in relevant part:

Q.   What conditions have you diagnosed since you've seen [Plaintiff]?

A.   Her primary complaint the last time I saw her was significant hip and other joint pain; based on some preliminary labs, I'm suspecting rheumatoid arthritis.

* * * *

Q.   And [Plaintiff] has migraine headaches.  Do you know how often she has those headaches?

A.   I don't recall how often she has those.  I know we have treated her for those, but I don't remember or see in the notes how frequently she has those.

Q.   What do you treat them with?

A.      I know we have treated her with a medicine called Zomig when she gets a headache and I believe Phenergan for the associated nausea with the migraines.

Q.      Does nausea sometimes accompany severe migraines?

A.      Frequently, yes, sir.

Q.      Okay.  And you just don't know the frequency.  But let me ask you this:  when she has a migraine, would that preempt her from being able to work somewhere at a job?

A.      Yes, sir.

Q.      So if she has them with any frequency, say four a month, she'd probably be required to miss four days of work a month?

A.      Yes, sir.

Q.      Okay.  And she has – you think she's got rheumatoid arthritis?

A.      Yes, sir.  Based on her symptoms and a positive rheumatoid factor and a positive anti-CCP lab, I think that is likely; however, she's pending a referral to a rheumatologist at UAB for confirmation.[1]

Q.      I saw something in your notes about fibromyalgia.  Is it more than likely, instead of fibromyalgia, that she's got rheumatoid arthritis?

A.      Yes, sir.

                                        * * * *

Q.      Would you expect her to have moderate to moderate-to-severe pain from this arthritis?

---

[1]The rheumatologist subsequently disagreed with Dr. Holt.  (R. 451).  As a result, Plaintiff is only pursing a disability claim based on the migraine headaches.  Doc. 9 at 3.

A.      Yes, sir.

Q.      And would you expect during those periods of a flare or I guess worsening symptoms, would she be able to work with that much pain?

A.      Very likely not.

Q.      Do you know how often she has moderate-to-severe pain to severe pain, or do you have a reasonable medical - -

A.      <u>I feel like</u> it is most of the time, almost continuously.

Q.      Okay.  If she weren't in the Hope Clinic then, you probably would have prescribed narcotic pain medication?

A.      Very likely, yes, sir.

* * * *

Q.      The arthritis has nothing [to] do with the migraines, does it, or does it?

A.      Pain of any type, including arthritis or rheumatoid arthritis, could trigger migraines or make them worse.

Q.      And migraines are different from tension headaches, aren't they?

A.      Yes, sir.

(R. 438-40) (emphasis added).

        Based on its review of Dr. Holt's testimony and the record as a whole, the court disagrees with Plaintiff that Dr. Holt's testimony establishes conclusively that Plaintiff's migraine headaches are disabling.  First, as a threshold matter, the

court notes that the ALJ never found that Plaintiff's migraine headaches

constituted a severe impairment, (R. 14), and that Plaintiff does not challenge that

finding.  Obviously, it is axiomatic that a condition must first amount to a severe

impairment before it can rise to the level of a disability.  20 C.F.R. §

404.1520(a)(4)(ii).  Stated differently, Plaintiff cannot be disabled if she does not

have a severe impairment.  Second, even ignoring the severe impairment issue, Dr.

Holt stated clearly that he did not recall, and his treatment notes failed to indicate,

how often Plaintiff had migraine headaches.  In fact, this court's review of

Plaintiff's entire Hope Clinic medical file, which is were Dr. Holt and other

physicians evaluated Plaintiff, reveals that Plaintiff complained about her migraine

headaches only once, on April 18, 2006.  (R. 378).  Therefore, Dr. Holt's opinion

that Plaintiff could potentially miss four days of work per month and Plaintiff's

contention she could not "complet[e] the probationary period of any employment,"

doc. 9 at 3, is based on impermissible conjecture rather than on objective medical

evidence.  *See* 20 C.F.R. § 416.912(b).  Finally, because Dr. Holt admitted his

lack of knowledge about Plaintiff's migraine headaches, the regulations permit the

ALJ to assign Dr. Holt's opinion "little weight."  *See* 20 C.F.R. §

404.1527(d)(2)(ii) ("Generally, the more knowledge a treating source has about

your impairment(s) the more weight we will give to the source's medical

opinion.").

In short, neither Dr. Holt nor Plaintiff cited any medical evidence in the record, and the court found none, to support Plaintiff's contention that her migraine headaches are disabling.  Because it is the Plaintiff's burden to prove disability, *see* 20 C.F.R. § 416.912(a), this court finds that Plaintiff failed to establish that her migraine headaches are a severe and disabling condition, *see* 20 C.F.R. § 416.905(a).  Therefore, the ALJ's decision to assign Dr. Holt's opinion "little weight" is supported by substantial evidence.

Finally, although Plaintiff does not challenge the ALJ's finding about her rheumatoid arthritis, *see* doc. 9 at 3, Dr. Holt's erroneous rheumatoid arthritis diagnosis is further evidence that the ALJ did not err in assigning Dr. Holt's opinion "little weight."  After Dr. Holt made the preliminary diagnosis, he referred Plaintiff to a specialist.  Thereafter, on July 6, 2009, and August 12, 2009, rheumatologist Dr. Maria Danila ("Dr. Danila") evaluated Plaintiff and noted that (1) she "remains independent with the activities of daily living," (2) Plaintiff's CT scan of her pelvis revealed "mild degenerative arthrosis of both SI joints," and (3) Plaintiff's rheumatoid factor "was mildly elevated."  (R. 451).  Based on the objective medical evidence, Dr. Danila rejected Dr. Holt's rheumatoid arthritis diagnosis and diagnosed Plaintiff instead with fibromyalgia syndrome,

osteoarthritis, and carpel tunnel syndrome. *Id*. Needless to say, in light of Dr.
Danila's objective findings, Dr. Holt's opinion that Plaintiff had rheumatoid
arthritis was clearly not supported by the objective medical evidence the ALJ had
before he rendered his decision. Therefore, because the regulations allow the ALJ
to reject a treating physician's assessment that does not present "relevant evidence
to support an opinion," *see* 20 C.F.R. § 404.1527(d)(2) and (3), and to "give more
weight to the opinion of a specialist about medical issues related to his or her area
of specialty," *see* 20 C.F.R. § 404.1527(d)(5), the ALJ did not err in assigning Dr.
Holt's opinion "little weight."

## VI.  CONCLUSION

Contrary to Plaintiff's contention, the ALJ's finding is supported by
substantial evidence, and, in fact, Plaintiff failed to present any evidence to refute
the ALJ's opinion. Because Plaintiff bears the burden of proving her disability,
*see* 20 C.F.R. § 416.912(a) and (c), the court finds that the ALJ committed no
reversible error in finding that Plaintiff's migraine headaches are not severe and in
assigning Dr. Holt's opinion "little weight." Therefore, the Commissioner's final
decision is **AFFIRMED**. A separate order in accordance with the memorandum
of decision will be entered.

Done the 16th day of March, 2012.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE